REITLER, Respondent, vs. LINDSTROM and another, Appellants.

*December 14, 1905—January 9, 1906.*

*Adverse possession of land: Tax deeds: Description.*

1. In an action to quiet title the evidence is *held* to sustain a finding of the trial court that plaintiff and her predecessors in title had been in adverse possession of the disputed strip of land for more than twenty years.

2. A tax deed describing the premises as a certain fraction of an acre, and giving the north and south boundaries by naming the streets on which it abutted and the east and west boundaries by naming the owners of the adjoining lands, is *held* to cover the disputed strip with sufficient certainty, under the facts and circumstances shown.

APPEAL from a judgment of the circuit court for Rock county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

This is an action to quiet title to a strip of land in the city of Beloit. It is without dispute that the lands in question are within what is known as Brooks's addition to the city, though no plat has been recorded. It appears that the northerly boundary of plaintiff's and defendants' land is E street of such subdivision and that the center line of Brooks street is the southerly boundary. The center lines of these two streets intersect and make the northwest corner of the block in which the lands lie. The defendants own the northwest corner of this block and plaintiff owns the lands adjoining it on the east. East of plaintiff's land lies what is known as the Oliver lot. The following facts were found by the court:

On March 28, 1872, S. S. Northrup purchased under tax deeds from Rock county the "northwest triangle in northwest corner of northwest quarter of southwest quarter of section number 35, town 1, range 12, one-half acre, Brooks's addition, city of Beloit." On June 27, 1877, Northrup and wife conveyed the same description by quitclaim deed to Charles Newburgh, who on October 4, 1881, conveyed by quitclaim deed to Elizabeth Sheard the following description: "The west triangle in Brooks's unrecorded addition to Beloit, being bounded on the north by E street, on the southwest by Brooks street, and on the east by lot of E. B. Stanton, containing half an acre, more or less." At the time of this conveyance the east line of the land thus conveyed was established and located by Charles Newburgh and Elizabeth Sheard, the purchaser of the adjoining lot, and a fence was placed and located

on such line by them.  Elizabeth Sheard at the same time built and located a barn and other structures on the land which had been transferred to her by Newburgh, the structures bordering on the line so established as a division line, and she and her successors in title, including defendants, held possession and openly occupied this land up to this division fence and line to the exclusion of all other persons until the early part of the year 1902.   From the date he conveyed to Elizabeth Sheard, Charles Newburgh continued under the Northrup deed in open and exclusive occupancy of the remaining part of the land held by him up to this division line and fence as the boundary line, claiming it as owner and holding possession under such claim to the exclusion of all other persons.   This land is now owned by the plaintiff.

It also appears that Newburgh obtained a tax deed on this lot from Rock county in 1885 on the certificate of sale of 1879 for delinquent taxes for 1878.   This deed describes the premises as " $\frac{55}{100}$ acres, bounded on the north by E street, south by Brooks street, east by Oliver, west by Charles Newburgh, Brooks's addition to Beloit."   He conveyed to George J. Conry in 1886, who occupied it until he transferred his interest and possession in 1891 to the plaintiff, who has occupied it continuously and exclusively until she was disturbed in it by the defendants in the early part of 1902.

The appeal is from a judgment in favor of the plaintiff.

The cause was submitted for the appellants on the brief of *Fethers, Jeffris, Mouat & Newhouse,* and for the respondent on that of *Ruger & Ruger* and *J. H. Wickham.*

Siebecker, J.   It is urged that the conclusion of the trial court, to the effect that Newburgh had possession of the disputed strip of land from the year 1881, is not supported by the evidence.   We do not find this claim sustained by the evidence.   The testimony of Newburgh is explicitly to the point

that he was in actual possession of the strip and the adjoining land now owned by plaintiff at the time and after he conveyed the land now owned by defendants to Elizabeth Sheard, and that such occupancy was an open and uninterrupted one from the time of such transfer to Sheard and the building of the fence by them on the division line jointly established by them. The testimony tending to show the existence of such a division fence and the location, with reference thereto, of the barn and other structures by Elizabeth Sheard, and the use of the lands by the respective parties up to such boundary, conflicts with the claim that either party claimed to own beyond this division line. The testimony, however, strongly supports the court's finding that Newburgh, and all persons succeeding him as owners of the premises claimed by the plaintiff, maintained an open, notorious, and uninterrupted adverse possession thereof from 1881 until defendants' interference in 1902. Such occupation must be held to have been adverse as against everybody, and at the expiration of twenty years vested a fee in the plaintiff, who was then in possession as successor to the interest originally held by Newburgh. The adverse possession thus shown meets the calls of the statute on adverse possession. The evidence adduced shows that the lands in connection with which the strip was used and occupied were inclosed and occupied by Newburgh and his successors as an entirety from the time the division fence was located and constructed. This occupancy was of a character comporting with the ordinary and usual occupancy and use of such lands, and in its character and nature shows that it was an open, exclusive, continuous, and hostile one for the statutory period, and that it vested the title in the plaintiff. *Lampman v. Van Alstyne,* 94 Wis. 417, 69 N. W. 171; *Illinois S. Co. v. Bilot,* 109 Wis. 418, 84 N. W. 855, 85 N. W. 402; *Batz v. Woerpel,* 113 Wis. 442, 89 N. W. 516; *Illinois S. Co. v. Budzisz,* 119 Wis. 580, 97 N. W. 166. We must hold that plaintiff ac-

quired title to the disputed strip by adverse possession. This conclusion fully disposes of every claim defendants can make to the strip of land in question.

It also appears that the description in the tax deed from Rock county to Charles Newburgh in 1885 covers the disputed strip with sufficient certainty, under the facts and circumstances shown, to include it within the claim of title and actual occupancy under such tax deed. From this the conclusion must follow that plaintiff, under claim of title founded upon a written instrument, acquired title to the strip pursuant to secs. 4211, 4212, Stats. 1898. We take it that the judgment confirms the title so acquired by plaintiff and that the division line between plaintiff's and defendants' premises is established and located along the line of the fence erected by Newburgh and Elizabeth Sheard in 1881. Discussion of the other questions argued by counsel is not required, since the conclusions on the questions indicated require that the judgment appealed from be affirmed.

*By the Court.*—Judgment affirmed.